**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**PATRICIA BONVILLE,**

                Plaintiff,                      5:12-cv-1057
                                                        (GLS)

                v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,[1]

                Defendant.
_____

APPEARANCES:                        OF COUNSEL:

FOR THE PLAINTIFF:
Olinsky Law Group               HOWARD D. OLINSKY, ESQ.
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN    AMANDA J. LOCKSHIN
United States Attorney           Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

---

[1] The Clerk is directed to substitute Carolyn W. Colvin, Acting Commissioner of Social Security, for defendant Michael J. Astrue, and amend the caption accordingly. *See* Fed. R. Civ. P. 25(d).

**Gary L. Sharpe
Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Patricia Bonville challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Bonville's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## II. Background

On October 21 and October 31, 2008, Bonville filed applications for DIB and SSI, respectively, under the Social Security Act ("the Act"), alleging disability since June 25, 2007. (*See* Tr.[2] at 65-66, 158-66.) After her applications were denied, (*see id.* at 68-75), Bonville requested a hearing before an Administrative Law Judge (ALJ), which was held on August 3, 2010, (s*ee id.* at 39-64, 76-77). On January 13, 2011, the ALJ issued an unfavorable decision denying the requested benefits, which

---

[2] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 11.)

became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-26.)

Bonville commenced the present action by filing her Complaint on June 29, 2012 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 10, 11.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 13, 15.)

### III. <u>Contentions</u>

Bonville contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (*See* Dkt. No. 13 at 15-25.) Specifically, Bonville claims that the: (1) ALJ failed to adequately develop the record; (2) residual functional capacity (RFC) determination is unsupported by substantial evidence; (3) credibility findings are unsupported by substantial evidence; and (4) step five determination is unsupported by substantial evidence. (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (*See* Dkt. No. 15 at 4-15.)

3

## IV. Facts

The court adopts the parties' undisputed factual recitations. (*See* Dkt. No. 13 at 2-13; Dkt. No. 15 at 2.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Developing the Record

First, Bonville contends that the ALJ erred by failing to obtain a medical source statement from treating physician Sajid Kahn. (*See* Dkt. No. 13 at 15-17.) The Commissioner counters, and the court agrees, that the ALJ properly developed the record. (*See* Dkt. No. 15 at 11-12.)

---

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the Regulations governing SSI are omitted.

While the ALJ has an affirmative obligation to develop the administrative record, her duty to do so is not without limit. *See Guile v. Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010); *see also* 20 C.F.R. § 404.1512(d) (stating that, generally, a complete record contains a "medical history for at least the [twelve] months preceding the month in which" the claimant files her application). Indeed, if all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make her determination based upon that evidence. *See* 20 C.F.R. § 404.1520b(a). Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

In this case, the record contains numerous treatment records from various treating sources including physicians Rudolph Buckley, Robert Steves, and Sajid Kahn, and physician assistant Brian Berry. (*See* Tr. at 295-561, 565-82, 643-71, 680-722, 735-804, 808-10, 826-919, 927-70, 978-1021.) In addition, the record contains physical therapy progress notes and laboratory findings, including x-rays and MRIs, as well as

5

intelligence testing. (*See id.* at 306, 339, 460, 467, 482-83, 485, 609-12, 672-79, 723-31, 773-74, 777-78, 790, 805-07, 920-25, 971-77, 1022-29.) Moreover, the record contains assessments of Bonville's functional abilities by consultative examiners Sandra Boehlert, Kalyani Ganesh, and Dennis Noia. (*See id.* at 562-64, 1030-55.) The court is satisfied that further development of the record was unnecessary as the ALJ had before her substantial evidence that enabled her to render a decision. *See* 20 C.F.R. § 404.1520b(b) (providing that, even if the record evidence is inconsistent, further record development is not required if, after weighing all the evidence, a disability determination can be made); *see* also 20 C.F.R. § 404.1513(b)(6) (stating that the lack of a medical source statement from a treating physician will not, by itself, make the record incomplete); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013).

## B. <u>Residual Functional Capacity</u>

Next, Bonville argues that the ALJ's RFC determination is not supported by substantial evidence. (*See* Dkt. No. 13 at 18-21.) Specifically, Bonville contends that the ALJ erred by: (1) failing to fully adopt the opinions of Drs. Ganesh and Noia; and (2) failing to weigh the opinion of physician assistant Berry. (*See id.*) On the other hand, the

6

Commissioner argues that the ALJ properly determined Bonville's RFC and her determination is supported by substantial evidence. (*See* Dkt. No. 15 at 4-13.) Again, the court agrees with the Commissioner.

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence[4] in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ determined that Bonville retained the RFC to perform light work, except that she could only occasionally climb, balance, stoop, kneel, crouch, or crawl. (*See* Tr. at 14.) Further, the ALJ concluded that Bonville required a sit/stand option and was limited to unskilled, low stress work. (*See id.*) In making her determination, the ALJ gave "significant weight" to the opinions of Drs. Ganesh and Noia. (*Id.* at 19.)

---

[4] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

According to Bonville, the ALJ erred in failing to include a limitation for pushing and pulling because Dr. Ganesh opined that Bonville could only push and pull "frequently."[5]  (Dkt. No. 13 at 19.)  Notably, the Regulations define light work as involving "lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds. Even though the weight lifted may be very little, a job is in this category . . . when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  Notwithstanding Bonville's assertion, Dr. Ganesh's opinion, which limited Bonville to, among other things, frequently lifting and carrying twenty pounds, but continuously lifting and carrying up to ten pounds, does not suggest greater limitations than those found by the ALJ.  (*See* Tr. at 1044-52.)  Thus, the ALJ's physical RFC assessment is supported by substantial evidence.  *See Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

Bonville also argues that the ALJ erred in failing to include all of the

---

[5] "Frequently" was defined as one-third to two-thirds of the time.  (Tr. at 1049.)

limitations contained in Dr. Noia's medical source statement. (*See* Dkt. No. 19 at 19-20.) Specifically, Dr. Noia opined that Bonville's ability to respond appropriately to usual work situations and changes in a routine work setting was moderately limited. (*See* Tr. at 1041.) However, as moderate was defined as "more than a slight limitation . . . but the individual is still able to function satisfactorily," the ALJ did not err in relying on this opinion to conclude that Bonville could perform unskilled work.[6] (*Id.* at 1040.) Further, the ALJ did not err in failing to include in her RFC determination limitations in the areas of social functioning and concentration, persistence or pace. Bonville is correct in noting that, at step three, the ALJ concluded that Bonville suffered moderate difficulties in social functioning, based on her subjective complaints. (*See id.* at 13; Dkt. No. 13 at 20.) The ALJ also found that Bonville suffered moderate difficulties with respect to concentration, persistence, or pace. (*See* Tr. at 13.) However, in making her RFC determination, the ALJ relied on Dr. Noia's opinion that Bonville could generally interact moderately well with

---

[6] "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to . . . respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857 at *4 (1985).

the public, supervisors, and co-workers, and was capable of maintaining attention and concentration for tasks, and regularly attending to a routine and maintaining a schedule. (*See id.* at 17-19, 1038, 1041.) As Dr. Noia's opinion is consistent with the ALJ's RFC determination, (*compare id.* at 14, *with id.* at 1038,1040-42), the court rejects Bonville's argument that the mental RFC is unsupported by substantial evidence.

Finally, Bonville contends that the ALJ failed to weigh the opinion of Berry. (*See* Dkt. No. 13 at 20-21.) Throughout his treatment records, Berry opined that Bonville was either partially or totally disabled. (*See* Tr. at 333, 335, 337-38, 340, 682, 702, 704-05, 707-08, 796.) The ALJ noted that although she considered his opinion, Berry is not an acceptable medical source. (*See id.* at 18.) Notably, like all medical opinions, opinions from "other sources," such as physician assistants, are evaluated by considering the factors outlined in 20 C.F.R. § 404.1527(c). SSR 06-03p, 71 Fed. Reg. 45,593, 45,594-95 (Aug. 9, 2006). An ALJ should generally "explain the weight given to the opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.* at 45,596. Here, although the ALJ did not assign specific weight to Berry's

March 2009 opinion that Bonville was totally disabled, it is clear that she considered all of his treatment records. (*See* Tr. at 16-19.) Moreover, Berry's opinion offers no assessment of Bonville's functional capabilities and is, instead, on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(3); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Thus, Bonville's argument is without merit.

## C. <u>Credibility Determination</u>

Bonville next contends that the ALJ's credibility determination is not supported by substantial evidence. (*See* Dkt. No. 13 at 21-24.) According to Bonville, the ALJ: (1) failed to consider that her performance of basic daily activities caused her pain; (2) drew inappropriate conclusions from her ability to work on a part-time basis and her desire to work; (3) misstated the facts; and (4) impermissibly determined her RFC first, and then used that RFC to evaluate the consistency of her subjective complaints. (*See id.*) The court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," she "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the

extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ determined that Bonville's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC determination. (*See* Tr. at 18.) The ALJ discounted Bonville's allegations of limitation based on the objective medical evidence, the opinion

12

evidence, her ability to work part time, her pursuit of employment through Vocational and Educational Services for Individuals with Disabilities, her receipt of conservative treatment since her back surgery, and her activities of daily living. (*See id.* at 18-19.)

Contrary to Bonville's arguments, the ALJ properly considered her activities of daily living as reported to Dr Noia, as well as Bonville's testimony that she could work part-time, and evidence that she declared that she was ready, willing, and able to work during the time period for which she claims disability benefits, as factors relevant to assessing her credibility. (*See id.* at 13, 18-19, 48, 50, 333-34, 682, 1082); *House v. Comm'r of Soc. Sec.*, No. 09-CV-913, 2012 WL 1029657, at *12 (N.D.N.Y. Feb. 29, 2012). Moreover, the ALJ did note Bonville's claims of pain caused by laundry, housework, shopping alone, and driving. (*See* Tr. at 15.) In considering the limiting effects of Bonville's symptoms, the ALJ accurately cited the record when she noted that Bonville had described herself as mildly impaired. (*See id.* at 19, 312.) In addition, the ALJ was correct in noting that conservative treatment had been recommended by Bonville's treating sources. (*See id.* at 19, 649, 698, 940.) Finally, although Bonville alleges that the ALJ impermissibly determined her RFC

first, and then used that RFC to evaluate the consistency of her subjective complaints, (*see* Dkt. No. 13 at 24), it is clear that the ALJ undertook a detailed credibility analysis, and that her reference to consistency with the RFC determination was merely an indication that the RFC determination incorporated those findings. (*See* Tr. at 18-19.)

Ultimately, the ALJ's determination that Bonville's subjective complaints were only partially credible is not tainted by legal error and is supported by substantial evidence. (*See id.*)

D. **Step Five Determination**

Lastly, Bonville argues that the ALJ's step five determination is flawed because it was based on an incomplete hypothetical. (*See* Dkt. No. 13 at 24-25.) This argument is also unavailing.

In making her ultimate disability determination, the ALJ must consider whether the claimant can do any other, less demanding work existing in the national economy. See 20 C.F.R. §§ 404.1520(g), 404.1560(c); *accord White v. Sec'y of Health and HumanServs.*, 910 F.2d 64, 65 (2d Cir. 1990). If the ALJ's RFC assessment is supported by substantial evidence, it is appropriate for her to rely on that RFC assessment in questioning the vocational expert (VE). *See Mancuso v.*

*Astrue*, 361 F. App'x 176,179 (2d Cir. 2010). In addition to the RFC assessment, the ALJ must also rely on the claimant's age, education, past work experience, and the transferability of the claimant's skills in order to assess whether other jobs exist in the national economy which the claimant could perform. *See* 20 C.F.R. § 404.1520(g).

In questioning the VE in this case, the ALJ's hypothetical question—which accounted for a person of Bonville's age, education, and work background, who could perform unskilled, low stress, light work, but required a sit/stand option and could only occasionally perform postural movements, other than bending—accurately reflected her RFC assessment and credibility determination which, as discussed above, were supported by substantial evidence. (*Compare* Tr. at 14, *with id.* at 57-60.) As such, the ALJ's reliance on the VE's testimony to determine that Bonville could perform other work was appropriate.

### E.    Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Clerk is directed to substitute Carolyn W. Colvin, Acting Commissioner of Social Security, for defendant Michael J. Astrue, and amend the caption accordingly; and it is further

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Bonville's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

July 15, 2013
Albany, New York

_/s/ Gary L. Sharpe_
Gary D. Sharpe
Chief Judge
U.S. District Court